## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **RURAL MEDIA GROUP, INC., a** | ) | **CASE NO. 8:09CV447** |
| **Delaware corporation, and RFD-TV,** | ) | |
| **LLC, a Delaware limited liability** | ) | |
| **company,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| **v.** | ) | |
| | ) | |
| **PERFORMANCE ONE MEDIA, LLC, a** | ) | |
| **New York limited liability company, and** | ) | |
| **JOHN DOE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter is before the Court on Defendant Performance One Media, LLC's

Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2), or, in the

Alternative, Motion to Transfer Pursuant to 28 U.S.C. § 1404(a).  (Filing No. 5.)  For the

reasons set forth below, the Motion to Dismiss will be denied, but the Motion to Transfer

will be granted.

### FACTUAL BACKGROUND

Plaintiff Rural Media Group, Inc. ("RMG") is a Delaware Corporation with its principal

place of business in Omaha, Nebraska.  (Filing No. 1-1, Compl. ¶ 1; Filing No. 32-2, Ex.

A, Gottsch Aff. ¶ 3.)  RMG owns and operates Plaintiff RFD-TV, LLC ("RFD-TV"), a

Delaware limited liability company with its principal place of business in Omaha.  (Filing No.

1-1, Compl. ¶¶ 2, 5; Filing No. 32-2, Ex. A, Gottsch Aff. ¶¶ 4, 5.)  RFD-TV is a "national and

international television network" that focuses on "the needs and interests of agricultural and

rural America."  (Filing No. 32-2, Ex. A, Gottsch Aff. ¶ 5.)  Defendant Performance One

Media, LLC ("Performance One") is a New York limited liability company with its principal

place of business in Greenwood Village, Colorado.  (Filing No. 7-2, Ex. A, Sigg Decl. ¶ 2.)

Performance One does not "maintain any offices, mailing addresses, telephone listings,

agents, employees, or personnel within the [S]tate of Nebraska."  (*Id.* ¶ 3.)  Also, it does

not own real or personal property in Nebraska, is not licensed to do business in Nebraska,

and does not maintain a registered agent for service of process in Nebraska.  (*Id.*)

In mid-October 2009, Patrick Gottsch, who served as President of both RMG and

RFD-TV, telephoned Performance One and invited Robert Stigg and Michael Norton, who

were "the principal officers of Performance One," to a meeting in Omaha.  (Filing No. 32-2,

Ex. A, Gottsch Aff. ¶¶ 3-4, 7-8.)  Stigg and Norton accepted the invitation, and on or about

October 20, 2009, they met with Gottsch in Elkhorn, Nebraska, for approximately four

hours.  (*Id.* ¶¶ 7-8.)  During this meeting, Stigg and Norton told Gottsch that Performance

One had formed a "start-up" television network called In Country Television ("ICTV") that

would be targeted toward "the outdoorsman" and "the rural way of life."  (*Id.* ¶ 8.)

Performance One lacked content or programming for ICTV (apart from infomercials),

however, and Stigg and Norton told Gottsch that they had an "immediate need for

programming."  (*Id.*)  Gottsch asked Stigg and Norton whether "it would be productive to

explore the potential of jointly undertaking projects," and Stigg and Norton expressed

agreement with this suggestion.  (*Id.* ¶ 9.)  Gottsch also told Stigg and Norton that RFD-

TV's programmers were "under contract" and advised them that Performance One should

not interfere with the relationships between Plaintiffs and their programmers.  (*Id.* ¶ 16.)

Stigg and Norton replied that Performance One would engage in no such interference.  (*Id.*

¶ 17.)

2

Between mid-October and November 2009, representatives of RFD-TV and Performance One exchanged an unspecified number of e-mails, text messages, and telephone calls.  (Filing No. 32-2, Ex. A, Gottsch Aff. ¶¶ 13, 22.)  Some of these e-mails and text messages were exchanged between Norton and Edward Frazier, who served as the Director of Cable Sales for Plaintiffs.  (*Id.* ¶ 13.)  Also, some of these e-mails and telephone calls related to "potential future business undertaking(s) by and between the parties."  (*Id.* ¶ 22.)  Gottsch states that during this period of time, however, "Performance One began secretly soliciting [RFD-TV's] largest and longstanding programmer client, Superior Livestock Auction, Inc. [("Superior Livestock").]"  (*Id.* ¶ 14.)  The record indicates that Superior Livestock is a Nevada corporation with its principal place of business in Fort Worth, Texas.  (Filing No. 7-4, Ex. C, Compl. ¶ 3.)  No evidence suggests Performance One's alleged solicitation of Superior Livestock occurred within the State of Nebraska.

Sometime in early November 2009, Frazier and Gottsch met with Stigg, Norton, and other representatives of Performance One in Denver, Colorado, to "continue to explore the potential of jointly undertaking project(s) beneficial to Plaintiffs and Performance One."  (Filing No. 32-2, Ex. A, Gottsch Aff. ¶¶ 18-19.)  During the meeting, Gottsch repeated his statement that Performance One should not interfere with the business relationships between Plaintiffs and their programmers, and Stigg and Norton replied that Performance One had not, and would not, engage in any such interference.  (*Id.* ¶¶ 20-21.)  There is no evidence of further meetings between Performance One and Plaintiffs, and there is no evidence that the parties ever came to an agreement to enter into any joint projects or business undertakings.

3

On or about November 4, 2009, representatives of Performance One and Superior Livestock entered into a Letter of Intent ("LOI") stating that "Superior [Livestock] will be carried on ICTV for three years beginning January 1 2010 and go through the [sic] December 31 2012." (Filing No. 7-6, Ex. E, LOI at 1, 2.) Gottsch adds that sometime "[d]uring the same time period," Performance One "induced" two of RFD-TV's three advertising salesmen "to tender their resignations to RFD and beg[i]n working for Performance One." (Filing No. 32-2, Ex. A, Gottsch Aff. ¶ 23.) He also states that on December 14, 2009, a representative of Performance One attempted to persuade one of Plaintiff's other programmers to leave RFD-TV and "come over" to ICTV (*see id.* ¶ 29 (citing Filing No. 18-1, Ex. 1, Lamb Aff)), though the operative complaint was filed before this incident allegedly occurred (*see* Filing No. 1-1). No evidence suggests these salesmen or this second programmer were contacted in the State of Nebraska by Performance One.[1]

Sometime during the latter half of November 2009, Superior Livestock evidently decided that it would not enter into the business arrangement with Performance One that was outlined in the LOI. (Filing No. 32-2, Ex. A, Gottsch Aff. ¶¶ 24-25.) On November 24, 2009, Performance One sent a letter to Plaintiffs advising them that Performance One had a written agreement with Superior Livestock "for the future broadcast of Superior's livestock auctions, production auctions, and other television programming," and warning Plaintiffs that Performance One would "pursue any and all causes of action including . . . tortious interference with contract and/or tortious interference with prospective business relations"

---

[1]The record indicates that Performance One contacted Plaintiff's programmer in the State of Arizona by telephone and e-mail to ask it to move from RFD-TV to ICTV. (Filing No. 18-1, Lamb Aff. ¶¶ 5-14.)

4

if Plaintiffs were to "take any actions that interfere with Performance One's . . . agreement with Superior." (Filing No. 7-11, Ex. J at 1.) On December 1, 2009, Performance One filed suit against Superior Livestock in the Northern District of Texas "for breach of contract and injunctive relief . . . based on Superior Livestock's anticipatory breach of the LOI." (Filing No. 6, Def.'s Br. at 2-3 (citing Filing No. 7-4, Ex. C, Compl. ¶¶ 22-26).) RMG and RFD-TV were not named defendants in this complaint, though the complaint did include the following allegation: "RFD-TV is aware of the agreement between Superior Livestock and Performance One, yet RFD has chosen to tortiously interfere with Performance One's contractual rights." (Filing No. 7-4, Ex. C, Compl. ¶ 20.) On December 4, 2009, Performance One amended its complaint in the Northern District of Texas to add RMG and RFD-TV as defendants. (Filing No. 7-7, Ex. F, Am. Compl. at 1.)

Meanwhile, on December 2, 2009, RMG and RFD-TV filed a seven-count complaint in the District Court of Douglas County, Nebraska, against Performance One and "John Doe," alleging that Defendants interfered with Plaintiffs' business relationships with its programmers. (Filing No. 7-3, Ex. B, Compl. ¶¶ 5-20.) The Plaintiffs' seven causes of action are labeled as follows: (1) "accounting," (2) "misrepresentation," (3) "reckless indifference," (4) "unlawfully restrain trade," (5) "civil conspiracy," (6) "tortious interference," and (7) "declaratory judgment." (*See generally id.*) On December 11, 2009, Performance One removed the action to this Court. (*See generally* Filing No. 1.) Plaintiffs' complaint filed on December 2, 2009, in the District Court of Douglas County, Nebraska, is therefore the operative complaint in this case.

Performance One filed the instant motion on December 14, 2009, arguing that the Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2)

5

because this Court lacks personal jurisdiction over Performance One.  (Filing No. 5.)  In the alternative, Performance One asks the Court to transfer this case to the United States District Court for the Northern District of Texas pursuant to 28 U.S.C. § 1404(a), either because Performance One's action in the Northern District of Texas was "first filed" and relates to the same subject matter that forms the basis of the instant complaint, or because "compelling circumstances" warrant a transfer.  (Filing No. 5; Filing No. 6 at 12-14.)

**STANDARDS OF REVIEW**

**I.      Personal Jurisdiction**

To survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "the plaintiff must state sufficient facts in the complaint to support a reasonable inference that defendants may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (citing *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)).  After jurisdiction has been controverted or denied, "the plaintiff bears the burden of proving facts supporting personal jurisdiction." *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (citing *Dever,* 380 F.3d at 1072).  To make a prima facie showing of jurisdiction–and thereby satisfy its burden–a plaintiff cannot simply rely on "the pleadings alone," but must submit affidavits and other exhibits to establish the court's personal jurisdiction over the defendant.  *Id.* (quoting *Dever*, 380 F.3d at 1072).  When considering these evidentiary materials, the Court must view the facts in the light most favorable to the plaintiff and resolve all factual conflicts in its favor.  *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1387 (8th Cir. 1991).

6

## II.     Inter-District Transfer

A federal district court may transfer a case to another district pursuant to 28 U.S.C. § 1404.  Section 1404(a) states, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Courts considering motions to transfer are not limited to the factors specified in the statute; rather, they must engage in "a case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors."  *Terra Int'l., Inc. v. Mississippi Chemical Corp.*, 119 F.3d 688, 691 (8th Cir. 1997).  "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."  *Id.* at 695.

A district court may also transfer a case to another district under the "first-filed rule."  "The rule 'gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction.'"  *Midwest Motor Express, Inc. v. Central States Southeast*, 70 F.3d 1014, 1017 (8th Cir. 1995) (quoting *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993)).  Courts should apply the first-filed rule "in the absence of compelling circumstances."  *Northwest Airlines, Inc.*, 989 F.2d at 1004-05 (quoting *United States Fire Insurance Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488-89 (8th Cir. 1990)).

**DISCUSSION**

**I.     Rule 12(b)(2) - Lack of Personal Jurisdiction**

"A federal court may exercise jurisdiction 'over a foreign defendant only to the extent permitted by the forum state's long-arm statue and by the Due Process Clause of the Constitution.'" *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (quoting *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). Thus, the determination of whether this Court has personal jurisdiction over Performance One presents two issues: (1) whether the requirements of the Nebraska long-arm statute are satisfied, and (2) whether the exercise of jurisdiction over Performance One will violate the Due Process Clause. But because Nebraska's long-arm statute[2] confers personal jurisdiction to the "to the fullest extent permitted by the United States Constitution," the

---

[2]The statute states:

A court may exercise personal jurisdiction over a person:
      (1) Who acts directly or by an agent, as to a cause of action arising from the person:
      (a) Transacting any business in this state;
      (b) Contracting to supply services or things in this state;
      (c) Causing tortious injury by an act or omission in this state;
      (d) Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this state;
      (e) Having an interest in, using, or possessing real property in this state; or
      (f) Contracting to insure any person, property, or risk located within this state at the time of contracting; or
      (2) Who has any other contact with or maintains any other relation to this state to afford a basis for the exercise of personal jurisdiction consistent with the Constitution of the United States.

Neb. Rev. Stat. § 25-536 (West, Westlaw through 1st special session 2009).

8

Court's analysis need only address whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause. *Stanton v. St. Jude Medical, Inc.*, 340 F.3d 690, 693 (8th Cir. 2003) (citing *Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 612 (8th Cir. 1994)); *see also Wagner v. Unicord Corp.*, 526 N.W.2d 74, 77-78 (Neb. 1995).

Due process requires that a non-resident defendant have sufficient "minimum contacts" with the forum state "such that the maintenance of the suit [in that state] does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). *See also Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) ("The Due Process Clause requires that 'minimum contacts' exist between the nonresident defendant and the forum state before the court can exercise jurisdiction over the defendant."). "The Supreme Court has set forth two theories for evaluating minimum contacts, general jurisdiction and specific jurisdiction." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004). "Under the theory of general jurisdiction, a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984)). "In contrast, specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." *Id.* (citing *Hall*, 466 U.S. at 414). Under either of these two theories, the defendant must have committed "some act by which the defendant purposely avail[ed] itself of the privilege

9

of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Dever*, 380 F.3d at 1073 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985). "This purposeful availment must be sufficient to provide the defendant with fair warning that his activities might result in his being haled into court in that jurisdiction." *Johnson v. Woodcock*, 444 F.3d 953, 955 (8th Cir. 2006). "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King Corp.*, 471 U.S. at 476 (quoting *International Shoe Co.*, 326 U.S. at 320). *See also Dever*, 380 F.3d at 1073.

Taking the foregoing principles into account, the Eighth Circuit "instruct[s] courts to consider the following factors when resolving a personal jurisdiction inquiry: (1) the nature and quality of a defendant's contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Dever*, 380 F.3d at 1073-74 (internal quotation marks, brackets, and citation omitted). *See also Sybaritic, Inc. v. Interport Intern., Inc.*, 957 F.2d 522, 524 (8th Cir. 1992) (explaining that this five-factor framework "incorporates the notions of both 'minimum contacts' and 'fair play and substantial justice'"). The first three factors are given more weight than the remaining factors, although factor three may be inapplicable if jurisdiction is predicated on the theory of general jurisdiction. *Dever*, 380 F.3d at 1074.

## A.     Minimum Contacts with Nebraska

Performance One argues first that Plaintiffs cannot show that Performance One had minimum contacts with Nebraska using the general jurisdiction theory.  (Filing No. 6, Def.'s Br. at 8-9.)  The Court agrees.  Indeed, Plaintiffs do not argue that Performance One has "continuous and systematic" contacts with Nebraska.  (*See generally* Filing No. 31, Pls.' Br.)

It remains to be determined whether Plaintiffs have made a prima facie showing of jurisdiction under the specific jurisdiction theory.  Plaintiffs have submitted a number of arguments on this point, and each of them will be analyzed in turn.

### 1.     The October 20, 2009, Meeting in Elkhorn, Nebraska

Plaintiffs argue first that the October 20, 2009, meeting between Gottsch and Performance One's "principal officers" in Elkhorn, Nebraska, is sufficient, standing alone, to establish this Court's personal jurisdiction over Performance One.  (Filing No. 31, Pls.' Br. at 11.)  In support of this argument, Plaintiffs submit that jurisdiction is appropriate because Performance One's agents made a fraudulent misrepresentation during the Nebraska meeting that forms the basis of Plaintiffs' claims.  (*Id.* at 11, 14.)

Although Plaintiffs cite no authority holding specifically that a misrepresentation made during a single meeting in the forum state can support jurisdiction in that forum, the Court notes that Plaintiffs' argument is consistent with the law in other circuits.  For example, the Third Circuit has held that "[p]ersonal jurisdiction may be exercised over a non-resident defendant who, while present in the forum state, makes a deliberate misrepresentation during the course of negotiations or other direct oral communications

11

with the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992). The Fifth Circuit has adopted the Third Circuit's view, noting that "[n]ot only did the court in *Carteret Savings* find minimum contacts, but the court also found it insignificant that the defendant might have come to the forum at the request of the plaintiff or that the defendant might not have initially solicited the plaintiff's business." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). Other courts follow this reasoning as well. *See, e.g.*, *RNW Assoc., Inc. v. Corporate Underwriters, Ltd.*, Nos. 93-6327, 93-6338, 1994 WL 721383 (10th Cir. Dec. 23, 1994). It is noteworthy that in *Kim v. Kim*, 324 F. Supp. 2d 628, 641 (E.D. Pa. 2004), the district court interpreted *Carteret Savings* to hold that allegations of a fraudulent statement made in a state to a resident of that state "are sufficient to establish a *prima facie* case of jurisdiction" in that state. *See also E.I. duPont de Nemours and Co. v. Rhodia Fiber and Resin Intermediates, S.A.S.*, 197 F.R.D. 112, 121 (D. Del. 2000) (reaching the same conclusion after analyzing the question in light of Delaware's long arm statue and the Due Process Clause).

Also, it is well-established that a single act sometimes can provide a sufficient basis for personal jurisdiction. As the Supreme Court explained in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985),

> So long as it creates a "substantial connection" with the forum, even a single act can support jurisdiction. The Court has noted, however, that "some single or occasional acts" related to the forum may not be sufficient to establish jurisdiction if "their nature and quality and the circumstances of their commission" create only an "attenuated" affiliation with the forum. This distinction derives from the belief that, with respect to this category of "isolated" acts, the reasonable foreseeability of litigation in the forum is substantially diminished.

(Citations omitted).

12

Citing *Burger King Corp.*, Performance One argues that its attendance at the Nebraska meeting is too "attenuated" a contact to support a finding that it purposefully availed itself of the privilege of conducting activities within Nebraska. (Filing No. 6, Def.'s Br. at 10.) Its argument is not without force. The four-hour meeting, which was convened in Nebraska at Plaintiffs' invitation, represented, in essence, a preliminary meeting to explore business opportunities. The meeting did not lead to joint projects or business undertakings between the parties (though it did lead to some follow-up communications that will be discussed below), and Plaintiffs' claims do not relate to Performance One's failure to participate in any such projects. But the allegation that Performance One's representatives made false representations to Plaintiffs during the Nebraska meeting is significant. Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that Performance One should have known that its misrepresentation during the Nebraska meeting would have led Plaintiffs to believe that Performance One was interested in cooperating with Plaintiffs, when in fact Performance One intended to lure away Plaintiffs' programmers and staff. Thus, Performance One should have anticipated that its alleged fraudulent statement could subject it to suit in Nebraska.

Performance One also argues that "Plaintiffs' allegations do not relate to any forum-related activity by Performance One with[in] the State of Nebraska," stating, "Although Plaintiffs complain of Defendant's efforts to compete with [RMG] and RFD-TV, Plaintiffs do not contend that Performance One took any action within the forum." (Filing No. 6, Def.'s Br. at 10.) While it seems to be true that Performance One did not solicit programmers and staff located in the State of Nebraska, Performance One's argument that it took *no* action within Nebraska is inconsistent with the record. As noted above, Plaintiffs

13

claim that Performance One made false statements during a meeting in Nebraska, inducing Plaintiffs to view Performance One as a potential collaborator rather than a competitor for staff and programmers.  To the extent that Plaintiffs' causes of action relate to these false statements, they relate to Performance One's activity in Nebraska.

In summary, the Court concludes that the alleged false statements made by Performance One during the parties' meeting in Elkhorn, Nebraska, are directly related to Plaintiffs' misrepresentation claims.  Although the alleged false statements were made during a single contact between Performance One and Nebraska, they were of such a nature and quality that Performance One had fair warning that its actions in Nebraska might result in its being haled into court there.

### 2.    The Parties' Text Message, E-mail, and Telephone Contacts

Plaintiffs argue that the telephone calls, text messages, and e-mail correspondence exchanged between the agents of Performance One and Plaintiffs in the wake of the Nebraska meeting bolster their claim that this Court has personal jurisdiction over Performance One.  (Filing No. 31, Pls.' Br. at 11.)  The Court concludes that these contacts support the finding that Performance One had minimum contacts with Nebraska.

Preliminarily, the Court notes that Plaintiffs have not specified the number of telephone, e-mail, and text message communications that were made between Performance One and Nebraska.  Also, apart from a general statement indicating that some of these communications related to "potential future business undertaking(s) by and between the parties," (Filing No. 32-2, Ex. A, Gottsch Aff. ¶ 22), the content of these communications has not been disclosed.  On this record, it is difficult (if not impossible) for the Court to assess the nature and quality of these contacts, their quantity, and their

14

relation to Plaintiffs' causes of action, as the Eighth Circuit instructs.  The Court also notes that contacts by phone and mail, standing alone, are generally "insufficient to justify exercise of personal jurisdiction under the due process clause."  *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006) (quoting *Porter v. Berall*, 293 F.3d 1073, 1076 (8th Cir. 2002)).  *See also Bell Paper Box, Inc. v. Trans Western Polymers, Inc.*, 53 F.3d 920, 923 (8th Cir. 1995) ("The use of interstate facilities, such as telephones or mail, is a 'secondary or ancillary' factor 'and cannot alone  provide the minimum contacts required by due process.'"  (Citations and internal quotation marks omitted)).

Despite the shortcomings in Plaintiffs' evidence, the parties' exchange of communications does support Plaintiffs' argument that Performance One is subject to this Court's jurisdiction.  When the evidence is viewed in a light favorable to Plaintiffs, these communications–which were made during the same time that Performance One entered into the letter of intent with Superior Livestock–can be seen as bolstering the effect of the alleged misrepresentations made by Performance One during the Nebraska meeting.  In other words, through these contacts with Nebraska, Performance One suggested to Plaintiffs that Performance One hoped to collaborate with them, and thereby made it more likely that Plaintiffs would rely on the alleged misrepresentation made during the Nebraska meeting.  The communications therefore favor of a finding that Performance One had fair warning that its contacts with Nebraska might subject it to suit here.

### 3.     Performance One's Alleged Broadcasts

Plaintiffs also argue that "Performance One's broadcasting of its programming throughout the United States, with the expectation that it would reach Nebraska viewers,

15

provides additional grounds for this Court to exercise personal jurisdiction over Performance One." (Filing No. 31, Pls.' Br. at 13 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)).) This argument is unpersuasive because Plaintiffs have submitted no evidence that Performance One broadcast programming "throughout the United States." The record shows only that ICTV was a "start-up" television network that "*planned* to appeal" to a particular audience, and although Gottsch "recognized Performance One had a 'channel' or 'bandwidth' on a satellite," he also recognized that Performance One had virtually no programming for the channel. (Filing No. 32-2, Ex. A, Gottsch Aff. ¶¶ 8-9 (emphasis in original).) In short, there is no indication that Performance One broadcast programming with the expectation that the programming would reach Nebraska viewers. Furthermore, even if Performance One did engage in such broadcasting, there is no evidence that these broadcasts would have had any relationship with any of Plaintiffs' claims against Performance One. Therefore, the Court must reject Plaintiffs argument that Performance One's alleged broadcasting activities support a finding that Defendant is subject to personal jurisdiction in Nebraska.

### 4.    The "Effects Test"

Not all of Plaintiffs' claims relate directly to Performance One's actions in, or communications directed to, the State of Nebraska. For example, the Complaint alleges that Performance One committed "tortious interference" with Plaintiffs' business relationships by "(1) unlawfully tamper[ing] with Programmers; (2) sen[ding] information, misleading or otherwise to Programmers; [and] (3) communicat[ing] with Programmers." (Filing No. 1-1, Compl. ¶ 39.) As Performance One correctly notes, there is no evidence

16

that Performance One performed any of these acts in the State of Nebraska or communicated with any programmers in Nebraska.  (Filing No. 33, Def.'s Br. at 5.)  Thus, in contrast to Plaintiffs' misrepresentation claims, this "tortious interference" claim–and perhaps others in the Complaint–may lack a connection with Nebraska.  Because Plaintiff is relying on the theory of specific jurisdiction, this possible lack of connection between some of Plaintiffs' claims and Performance One's acts in Nebraska is significant.

Plaintiffs submit that even though some of their claims are based on actions that Performance One took outside Nebraska, Performance One is nevertheless subject to this Court's personal jurisdiction under the "effects test."  (*See* Filing No. 31 at 12-13.)  The effects test allows "personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences felt in the forum state." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390-91 (8th Cir. 1991) (internal quotations omitted); *see also Calder v. Jones*, 465 U.S. 783, 789-90 (1984); *Finley v. River North Records, Inc.*, 148 F.3d 913, 916 (8th Cir. 1998).  Jurisdiction is not proper under the effects test, however, where the defendant's activities are directed elsewhere. *E.g.*, *General Electric Capital Corp. v. Grossman*, 991 F.2d 1376, 1387 (8th Cir. 1993); *Hicklin Eng'g v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (per curium); *Keystone Publishers Service, Inc. v. Ross*, 747 F.2d 1233, 1234 (8th Cir. 1984) (per curium).

The Plaintiffs' argument that jurisdiction is proper under the effects test presents a close question.  After careful consideration, the Court finds that a prima facie showing of personal jurisdiction has been made.

In *Calder v. Jones*, the plaintiff claimed that she had been libeled by the *National Enquirer*, a Florida-based newspaper with a national circulation. 465 U.S. at 784. In finding that the defendants were subject to personal jurisdiction in California, the Court stated,

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms of both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.
> . . . .
> . . . [P]etitioners are not charged with mere untargeted negligence. Rather, their intentional, and allegedly tortious, actions were expressly aimed at California. Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article.

*Id.* at 788-90 (citations and footnote omitted).

Here, as in *Calder*, an out-of-state party is accused of engaging in intentional conduct in other states that it knew would cause injury in Nebraska. Performance One's knowledge that its actions would cause harm in Nebraska does not merely flow from the fact that the programmer (or programmers) targeted by Performance One had preexisting business relationships with the Nebraska Plaintiffs. Rather, the record shows that during a meeting in Nebraska, Plaintiffs specifically told Performance One that their programmers were under contract and that Performance One should not interfere with these business relationships, and Performance One stated "specifically and unequivocally" that it would

18

not engage in any such interference.  (Filing No. 32-2, Ex. A, Gottsch Aff. ¶¶ 16-17.)
Performance One later repeated this assurance and engaged Plaintiffs in preliminary
discussions about cooperative business ventures while allegedly engaging in the very sort
of interference that it had promised not to commit.  Thus, the Court finds that Plaintiffs
have made a prima facie showing that Performance One's "intentional, and allegedly
tortious, actions were expressly aimed at" Nebraska, even if much of Performance One's
conduct occurred outside the State of Nebraska.  *Calder*, 465 U.S. at 789.

The Court also finds that *Grossman*, *Hicklin Engineering*, and *Ross* are
distinguishable from the instant case.  Each of these cases merits brief discussion.

In *General Electric Capital Corp. v. Grossman*, 991 F.2d 1376 (8th Cir. 1993),
accounting reports relating to a Canadian corporation were prepared in Canada by
Canadian accounting firms, and these reports failed to disclose the firms' knowledge of
certain irregularities.  The plaintiff, a Minnesota corporation, argued that because these
statements were ultimately consolidated with its own financial statements, the accounting
firms had fair warning that they might be subject to suit in Minnesota.  The Eighth Circuit
disagreed, noting that "the 'focal point' of the alleged wrongdoing and harm occurred in
Canada, where [the Canadian corporation] was located, where its auditing and accounting
functions took place, and where Air Canada's purchase of [the Canadian corporation] and
related negotiations primarily occurred."  991 F.2d at 1387.  The court observed,
"[a]lthough it can be argued that the effects of the harm ultimately occurred in Minnesota,
under the circumstances, the accounting firms could not reasonably anticipate 'being haled'
into court there."  *Id.* at 1388.  Like the accounting firms in *Grossman*, Performance One
is alleged to have committed acts outside the forum state that caused harm to a business

19

within the forum state.  Unlike *Grossman*, however, the evidence here (viewed in a light favorable to Plaintiffs) shows that Performance One's representatives traveled to Nebraska, where they falsely stated that Performance One would not interfere with Plaintiffs' programmers.  Performance One then intentionally directed allegedly tortious actions at the Nebraska Plaintiffs by attempting to lure away their programmers (as it had just promised not to do) and by hiring away their salesmen.  In short, while the "'focal point' of the alleged wrongdoing" in *Grossman* was in Canada, the focal point of the wrongdoing in the instant case was in Nebraska.

In *Hicklin Engineering v. Aidco, Inc.*, evidence showed that "Aidco sent correspondence containing defamatory statements to several of Hicklin's customers and interfered with its business."  959 F.2d at 739.  "None of the correspondence, however, was published in Iowa," where Hicklin was attempting to establish personal jurisdiction over Aidco.  *Id.*  The court found that personal jurisdiction was lacking, stating, "When a business seeks to promote its products and solicit the customers of its competitors, it necessarily wishes to have customers believe that its products are superior and to place its competitor's products in a less favorable light.  Although this promotion and solicitation may have an effect on a competitor, *absent additional contacts*, this effect alone will not be sufficient to bestow personal jurisdiction."  *Id.* (emphasis added).  In contrast with *Hicklin Engineering*, here Performance One did not merely compete with Plaintiffs by interfering with their business relationships with out-of-state programmers.  Performance One's representatives also traveled to Nebraska to explore the possibility of entering into cooperative business ventures with Plaintiffs, assured Plaintiffs that it would not interfere

20

with Plaintiffs' programmers, and then promptly began to solicit Plaintiffs' oldest and largest client to abandon Plaintiffs–even while continuing to communicate with Plaintiffs in Nebraska about potential joint ventures.  In short, Performance One made "additional contacts" with Nebraska that distinguish this case from *Hicklin Engineering* and support the exercise of personal jurisdiction here.

In *Keystone Publishers Service, Inc. v. Ross*, the Eighth Circuit found that personal jurisdiction was lacking because the only contacts between the defendants and the forum state (Iowa) were "interferences with renewal contracts outside the State of Iowa causing damages to plaintiff in Iowa."  747 F.2d at1234.  The instant case differs from *Ross* in the same way that it differs from *Hicklin Engineering*.  Performance One did more than merely interfere with Plaintiff's programmers in other states:  It traveled to Nebraska, met with Plaintiffs in Nebraska, misrepresented its intentions to Plaintiffs during that meeting in Nebraska, and continued to contact Plaintiffs in Nebraska about cooperative business projects while simultaneously interfering with Plaintiffs' business relationships in other states.

In sum, Performance One is alleged to have engaged in intentional, allegedly tortious actions that it knew would injure Plaintiffs in Nebraska.  Indeed, during a meeting in Nebraska the parties specifically discussed the Plaintiffs' desire to protect their relationships with their programmers, and Performance One specifically (and falsely) agreed not to interfere with those relationships.  Although Performance One now admits that Plaintiffs are its "direct competitors in the United States television market," (Filing No. 6, Def.'s Br. at 2), in late 2009 Performance One acted as if it were interested in cooperating with Plaintiffs in Nebraska while it secretly attempted to lure away Plaintiffs'

out-of-state programmers and staff.  Thus, the evidence shows that Performance One's actions were not in the nature of ordinary business competition, where the connection between the out-of-state competitor and the forum state is often merely incidental and likely insufficient to establish minimum contacts.  *See, e.g.*, *Hicklin Eng'g*, 959 F.2d at 739; *Ross*, 747 F.2d at 1234.  Instead, Performance One purposefully reached out to Nebraska as it took actions that it knew would cause injury there.  The Court finds that, based on the "effects test," Performance One should reasonably have anticipated being haled into court in Nebraska to answer for its alleged actions.

For all of the reasons explained above, the Court finds that Performance One purposefully established minimum contacts with Nebraska, such that it had fair warning that its activities might result in its being haled into court here.  Performance One traveled to the State of Nebraska, at Plaintiffs' invitation, to explore potential business opportunities.  At this meeting, Plaintiffs told Performance One not to interfere with their business relationships with their programmers, and Performance One agreed.  With this assurance having been made (and later repeated), the parties exchanged an unspecified number of email, text, and telephone communications related to potential joint projects.  At the same time, however, Performance One allegedly was secretly attempting to persuade Plaintiffs' programmers to leave Plaintiffs and move to ICTV.  The Court finds that the nature and quality of Performance One's contacts with Nebraska are sufficient to support the exercise of personal jurisdiction over Performance One in Nebraska, both because Performance One allegedly made a false representation to Plaintiffs in Nebraska that related directly to Plaintiffs' misrepresentation claims and because Performance One's intentional conduct in other states was calculated to cause injury to Plaintiffs in Nebraska.  Also, there is a

22

clear connection between Plaintiffs' claims and Performance One's actions in and directed toward Nebraska. Although Performance One only attended one meeting in Nebraska, and although the quantity of its other contacts with Nebraska–which occurred only by text message, email, and telephone–is difficult to assess, the Court finds that Performance One's contacts with Nebraska were not random, fortuitous, or attenuated. Rather, Performance One has purposefully established the necessary minimum contacts to support the exercise of personal jurisdiction in Nebraska.

### B.      Fair Play and Substantial Justice

As noted, "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *International Shoe Co.*, 326 U.S. at 320). The nature and quality of Performance One's contacts with Nebraska, the quantity of those contacts, and the relation of Plaintiffs' claims to those contacts have been discussed above. The Court will now consider whether other factors identified by the parties weigh in favor of the exercise of jurisdiction. It should be noted, however, that "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp.*, 471 U.S. at 477.

Performance One argues that this Court should decline to exercise personal jurisdiction over it in Nebraska because it would be more convenient for the parties to

litigate this case in the Northern District of Texas.  (Filing No. 6., Def.'s Br. at 11-12.)  In support of this argument, Performance One notes that Superior Livestock "operates primarily in Fort Worth, Texas," and that "[a]ccording to RFD-TV's website, the Plaintiff has satellite and sales operations in, among other places, Arlington, Texas."  (*Id.* (citations omitted).)  Performance One submits that because it has already filed its complaint in the Northern District of Texas, "it would be more convenient for all parties if Plaintiffs were required to bring their claims in Texas."  (*Id.* at 12.)  In opposition to Performance One's argument, Plaintiffs argue that Performance One's Texas complaint "did not initially include Plaintiffs," and add that "[n]either party has significant contacts with the [S]tate of Texas." (Filing No. 31, Pls.' Br. at 15.)

The interests of convenience do weigh in favor a transfer of Plaintiffs' action to the Northern District of Texas.  Plaintiffs have a business connection with that district, and the programmer that is most central to Plaintiffs' claims (i.e., Superior Livestock) maintains its principal place of business there.  Nevertheless, the Court finds that Performance One has not presented so compelling a case as to render jurisdiction in Nebraska unreasonable.

For the foregoing reasons, the Court finds that Performance One's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) must be denied.

## II.    Motion to Transfer

Performance One argues that "if the Court decides that it may exercise personal jurisdiction over Performance One, it should transfer this case to the United States District Court for the Northen District of Texas pursuant to 28 U.S.C. § 1404(a), the 'first-filed' doctrine, or the 'compelling circumstances' exception thereto."  (Filing No. 6, Def.'s Br. at

24

12.)  The Court concludes that this case should be transferred to the Northern District of Texas pursuant to the first-filed rule.

As noted, the first-filed rule "gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." *Midwest Motor Express, Inc. v. Central States Southeast*, 70 F.3d 1014, 1017 (8th Cir. 1995) (quoting *Northwest Airlines, Inc. v. American Airlines, Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993)).  The rule "'is not intended to be rigid, mechanical, or inflexible,' but is to be applied in a manner best serving the interests of justice." *Terra Int'l., Inc. v. Mississippi Chemical Corp.*, 922 F. Supp. 1334, 1345 (N.D. Iowa 1996) (quoting *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1995)).  In the absence of compelling circumstances, the first-filed rule should be applied.  *Northwest Airlines, Inc.*, 989 F.2d at 1004-05 (quoting *United States Fire Insurance Co. v. Goodyear Tire & Rubber Co.*, 920 F.2d 487, 488-89 (8th Cir. 1990)).

Parallel litigation has been filed in this Court and in the Northern District of Texas. Indeed, in their answer to Performance One's third amended complaint in the Texas case, Plaintiffs state that Performance One's suit "involv[es] essentially the same claims and parties" as Plaintiffs' suit in this Court.  (Filing No. 34-2, Ex. K, Answer ¶ 56.)  Also, because Performance One has disputed whether this Court has personal jurisdiction over it, and because the parties did not dispute the court's exercise of personal jurisdiction in the Northern District of Texas,[3] this Court concludes that the Northern District of Texas is

---

[3]Plaintiffs filed an answer to Performance One's third amended complaint in the Northern District of Texas on January 11, 2010.  (Filing No. 34-2, Ex. K, Answer at 1.) In their answer, RMG and RFD-TV state, "Defendants admit . . . that they are subject at this time to personal jurisdiction in the United States District Court of Texas [sic], Fort

the "first court in which jurisdiction attache[d]." *Orthmann*, 765 F.2d at 121. There are no compelling circumstances weighing against the application of the first-filed rule in this case. On the contrary, the Court finds that it would be extraordinarily inconvenient to require the parties and witnesses to participate in parallel litigation in this Court and in the Northern District of Texas. Likewise, allowing the litigation to proceed in both the District of Nebraska and the Northern District of Texas would represent an inefficient use of judicial resources. Moreover, given the possibility that differing or conflicting results might be reached in each case, allowing Plaintiffs' action to proceed in this Court would be contrary to the interests of justice. Therefore, the Court concludes that this case should be transferred to the Northern District of Texas, where the action was first filed. *See Midwest Motor Express, Inc.*, 70 F.3d at 1017 (affirming district court's decision to transfer the case based on the first-filed rule).

In opposition to Performance One's motion, Plaintiffs argue that their Nebraska complaint was, in fact, first-filed. They state, "It was not until after Plaintiffs filed this suit on December 2, 2009[,] that Performance One elected to amend its complaint in the Texas action to add Plaintiffs as parties and to allege claims against Plaintiffs that are similar in nature to the tort-based claims asserted by Plaintiffs in this litigation." (Filing No. 31, Pls.' Br. at 17.) Although it is true that Performance One did not amend its complaint in the Texas action until December 4, 2009–two days after the filing of the instant action–it is settled that "the first court in which jurisdiction attaches has priority to consider the case." *Orthmann*, 765 F.2d at 121. In *Orthmann*, the plaintiff filed an action in the District of

---

Worth Division, as alleged in paragraph 8 of the Third Amended Complaint." (*Id.* ¶ 8.)

Minnesota on April 18, 1983, and an identical action in the Western District of Wisconsin on July 13, 1983. *Id.* at 120. Because personal jurisdiction was disputed in Minnesota, and because "none of the parties question[ed] whether the Wisconsin court [had] personal jurisdiction," the Eighth Circuit concluded that deference was owed to the Wisconsin court. *Id.* at 121. Similarly, deference is owed here to the Northern District of Texas, where there has been no jurisdictional dispute.

Accordingly,

IT IS ORDERED:

1.     Defendant Performance One's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) is denied;

2.     Defendant's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (Filing No. 5) is granted;

3.     This case shall be transferred to the United States District Court for the Northern District of Texas; and

4.     The Clerk of the Court shall take every action needed to accomplish the transfer and to terminate this case for statistical purposes.

DATED this 11th day of March, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

27